## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHAEL NEELY,

        Plaintiff,

v.                                     Case No:  8:22-cv-2556-NHA

CIRCLE K STORES, INC.,

        Defendant.

_____/

## ORDER

Plaintiff Michael Neely sues Defendant Circle K Stores, Inc. for a single count of negligence. Doc. 1-1. Mr. Neely alleges he slipped and fell in water leaked from a cooler while shopping in Circle K. *Id.* Mr. Neely alleges Circle K was negligent in allowing the condition to occur, in not remedying the condition thereafter, and in not physically marking or verbally warning Mr. Neely of the condition. *Id.* Circle K moves for summary judgment, alleging that the condition was openly and obviously dangerous, that Mr. Neely knew about the condition, that Circle K did mark and warn of the condition, and that Mr. Neely failed to exercise reasonable care in protecting himself from it. Doc. 24. Having reviewed the motion (Doc. 24), Mr. Neely's response (Doc. 28), and the record before the Court, the Court finds that genuine issues of fact preclude summary

judgment in Circle K's favor. Circle K's motion for summary judgment is denied.

## I.   Background

### A.   Undisputed Facts

The parties do not dispute the following facts:

On January 15, 2020, Mr. Neely was shopping in Circle K, when he slipped on standing water that had leaked from the store's cooler, and fell. Docs. 24, pp. 1-2; 28, p. 1; Neely Depo. Doc. 24-1, p. 21: 24-25. Prior to the day of the fall, Circle K's cooler often leaked into the aisle. Docs. 24, p. 2; 28, p. 4; Radeboldt Depo. Doc. 24-2, p. 10: 13-25. When it did, Circle K's employees regularly placed cones around the leak. Doc. 24, p. 4; Radeboldt Depo. Doc. 24-2, pp. 10: 24-25; 11: 1-19. As a daily customer, Mr. Neely was aware that Circle K's cooler had leaked into the aisle, potentially as often as multiple times per week, and that Circle K's employees often placed cones in the aisle when it did. Docs. 24, p. 2; 28, p. 1; Neely Depo. Doc. 24-1, p. 30: 3-13. On the day of Mr. Neely's fall, Circle K was aware that the cooler was leaking into the aisle. Docs. 24, p. 4; 28, p. 3; Radeboldt Depo. Doc. 24-2, p. 21: 13-16.

### B.   Facts in Dispute

The parties dispute whether Mr. Neely was aware of the standing water on the day of the accident. Doc. 24, p. 2; Neely Depo. Doc. 24-1, p. 26: 9-22. The parties further dispute whether Circle K's employees physically marked and

verbally warned Mr. Neely of the condition. Radeboldt Depo. Doc. 24-2, p. 31: 17-23; Screen Depo. Doc. 24-3, p. 9: 1-16; Neely Depo. Doc 24-1, p. 28: 15-24. The parties also dispute whether Mr. Neely took proper care in navigating the condition. Docs. 24, p. 15; 28, p. 2.

C.   Facts in the Record

i. *Knowledge of the Condition*

Before Mr. Neely's fall, Circle K's malfunctioning cooler had been leaking, fairly regularly, for months. Screen Depo. Doc. 24-3, p. 8: 5-14. Circle K's employees filed work orders for the malfunctioning cooler in the months and days preceding the accident. Smith Depo. Doc. 24-4, p. 10: 6-9. Specifically, Circle K's former assistant manager, Ms. Radeboldt, claimed that the cooler had been broken "a good seven, eight times" in the months preceding Mr. Neely's accident. Radeboldt Depo. Doc. 24-2, p. 24: 19-23. Ms. Smith, Circle K's former assistant store manager, testified that she placed at least two work orders in the six months prior to January 15. Smith Depo. Doc. 24-4, pp. 16: 23-25; 17: 1-2. Ms. Smith testified that "It looks like [maintenance] was just putting a band aid on it or you know. We needed a new cooler but they just kept doing whatever they had to, to keep it going." Smith Depo. Doc. 24-4, p. 16: 2-7.

In the four months preceding Mr. Neely's accident, former assistant store manager Latasha Screen testified she "was putting signs [out] every morning"

and making "sure that the water was off the floor because it had a leak. So, every morning I come in. . . I would come in and change it and get the water out[.]" Screen Depo. Doc. 24-3, p. 8: 5-14. Ms. Screen would use mop-heads and thick napkins to remove water from the area and would replace the mop-heads and thick napkins "[h]ourly, every two hours something like that." *Id.* at 8: 24-25.

Mr. Neely was a daily customer of Circle K and acknowledges that he knew the cooler leaked, "[f]rom going in the store and seeing the cones, having other people talk about it. Might have been saying the cooler leaks. You know, be careful. Stuff like that." Neely Depo. Doc. 24-1, p. 30: 6-10. Mr. Neely noticed water was "coming from the same area" and acknowledged that he had observed warning devices, such as cones, on prior occasions. *Id.* at 30: 11-13; 31: 6-9. Mr. Neely said he would go around the cones if they were present. *Id.* at 30: 11-18.

On January 15, 2020, the day of Mr. Neely's fall, the cooler was again leaking into the aisle. Docs. 24, p. 4; 28, p. 4; Radeboldt Depo. Doc. 24-2, p. 21: 13-16. Indeed, before Mr. Neely fell, the cooler was "leaking pretty bad." Smith Depo. Doc. 24-4, p. 14: 11-19. And Ms. Screen "hadn't got the water out" before Mr. Neely walked down the aisle. Screen Depo. Doc. 24-3, p. 9: 1-16. But, on the day of the fall, Mr. Neely states he was looking at and talking to the store manager when he slipped and fell. Neely Depo. Doc. 24-1, p. 19: 3-9.

The parties dispute whether, based on Mr. Neely's prior familiarity with the condition of the cooler, the obviousness of the condition, and the alleged markings and warnings discussed below, Mr. Neely knew the cooler had leaked into the aisle before he walked into the water, slipped, and fell. Docs. 24, p. 15; 28, p. 2; Neely Depo. Doc. 24-1, p. 28: 15-24. Mr. Neely asserts that, he didn't know and that, even if he knew of the leaked water, he would not have known it was dangerous. Doc. 28, p. 6.

### ii. Warnings

The parties dispute whether Circle K's employees marked and warned Mr. Neely of the leak just prior to his fall. Radeboldt Depo. Doc. 24-2, p. 31: 17-23; Screen Depo. Doc. 24-3, p. 9: 1-16; Neely Depo. Doc. 24-1, p. 28: 15-24. Circle K asserts that, on January 15, 2020, its employees both warned Mr. Neely about the standing water and marked the aisle with cones to prevent customers from entering it. Radeboldt Depo. Doc. 24-2, p. 31: 17-23; Screen Depo. Doc. 24-3, p. 9: 1-16. Specifically, Ms. Screen testified that she had been yelling out "Hey, don't go that way" to customers and, when she told Mr. Neely, before he walked down the aisle, he looked directly at her but ignored her. Screen Depo. Doc 24-3, p. 9: 1-16. To the contrary, Mr. Neely testified that employees did not warn him to avoid the aisle. Neely Depo. Doc. 24-1, p. 28: 15-17.

Circle K also asserts that, on the day of the fall, its employees had placed warning cones in the aisle and that Mr. Neely purposely avoided them. Doc. 24, p. 4. Ms. Screen stated, "I was putting signs [out] every morning." Screen Depo. Doc. 24-3, p. 8: 8-10. Ms. Radeboldt testified that "[w]e had two cones when you first walk in" as well as two other cones on both sides of the cooler. Radeboldt Depo. Doc. 24-2, p. 15: 12-18. Ms. Radeboldt further testified that Mr. Neely "touche[d] the top of the cones" multiple times before falling. *Id.* at 15: 12-24.  However, when Mr. Neely was asked in his deposition whether any warning cones or signs were present, Mr. Neely responded "Definitely was not this time. I'm 100 percent certain there wasn't." Neely Depo. Doc. 24-1, p. 28: 18-21.

### iii. Mr. Neely's Actions

The parties further dispute whether Mr. Neely took proper care in navigating the condition. Docs. 24, p. 15; 28, p. 4-5. Both Mr. Neely and Circle K agree in their briefs that, shortly after entering the store, "Plaintiff turned to the right into the first aisle where the cooler was located. Plaintiff [then] stepped in water that was coming from the leaking cooler and slipped and fell." Docs. 24, p. 2; 28, p. 2. The parties agree that Mr. Neely was not paying attention to his surroundings, in the moments leading up to his fall. Docs. 28, p. 2; 24, p. 2. Specifically, Mr. Neely testified that "I walked in . . . And the manager walked up beside me. I said hi to her and something else, and that's

6

when I slipped and fell. 'Cause I was looking at her and not the floor, really."
Doc. 24-1, p. 19.

The parties dispute whether Mr. Neely was actually aware of the water
at the time he walked into it and fell. *Compare* Neely Depo. Doc. 24-1, p. 19: 3-
9 (Mr. Neely testifying that after he entered the store, he immediately went
down the aisle to the right where he slipped and fell), *with* Radeboldt Depo.
Doc. 24-2, p. 15: 12-25 (the former store manager testifying that Mr. Neely,
after having entered the store, walked into multiple aisles, touched the
warning cones multiple times, then slipped and fell), *and* Smith Depo. Doc. 24-
4, p. 9: 9-19 (the former assistant manager acknowledging Mr. Neely walked
by the wet spot several times before falling). Circle K contends that Mr. Neely's
inattention or careless choice to walk into the hazard caused his fall. Doc. 24,
p. 15.

## II.   Standard of Review

Summary judgment is appropriate when the moving party demonstrates
"that there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is
genuine "if the evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986). A fact is material if it may "affect the outcome of the suit under the
governing law." *Id*. The moving party bears the burden of showing "that there

is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts...." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citation omitted). "If one or more of the essential elements is in doubt, then summary judgment must not be granted." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986).

## III.  Analysis

To establish negligence, a plaintiff must prove the defendant owed him a duty, the defendant breached that duty, and the breach proximately caused the plaintiff's injury. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). A defendant can prevail by disproving any one of those elements,

And, even if a plaintiff can prove each of these elements, a defendant can prevail if the defendant establishes an affirmative defense. *See Harris v. Shelby Cnty. Bd. of Educ.*, 99 F.3d 1078 (11th Cir. 1996) (holding that, despite plaintiff establishing a prima facie case, a defendant who establishes an affirmative defense is entitled to summary judgment).

In responding to a complaint for negligence, a defendant is entitled to raise the affirmative defense of contributory negligence. *See* Fed. R. Civ. P. 8(c)(1). At the time of Mr. Neely's fall, Florida applied a pure comparative-negligence doctrine, "which means that a jury should apportion fault between the plaintiff, defendant, and any third parties alleged to have been at fault, and render an award based on a defendant's percentage of fault in causing an injury."[1] *Williams v. Davis*, 974 So. 2d 1052, 1061 n. 10 (Fla. 2007); *Garcy v. Dupee,* 731 F. Supp. 1582, 1583 (S.D. Fla. 1990) ("Pure comparative negligence provides the rule of liability in Florida."); *Hoffman v. Jones,* 280 So. 2d 431, 438 (Fla. 1973) (deciding to use pure comparative negligence rather than contributory negligence as a method of determining and apportioning fault in Florida).

---

[1] This lawsuit precedes the 2023 change to Florida law prohibiting any recovery from an injured party who is more than 50 percent at fault for his injury. *See* Fla. Stat. § 768.81(6) and n. 2(B).

Here, Circle K moves for summary judgment, arguing that Mr. Neely presents insufficient facts to show that Circle K breached any duty to Mr. Neely and that, even if it did breach a duty to him, Mr. Neely's own acts of negligence prohibit his recovery.

A.    A Landowner's Duties of Care

In actions involving premises liability, "the duty of care owed by the landowner varies according to the visitor's status." *Barrio v. City of Miami Beach*, 698 So. 2d 1241, 1243 (Fla. 3d DCA 1997) (citation omitted). A "business invitee is one who is 'invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Moultrie v. Consol. Stores Int'l Corp.*, 764 So. 2d 637, 639 (Fla. 1st DCA 2000) (quoting *Community Christian Center Ministries, Inc. v. Plante,* 719 So.2d 368, 370 (Fla. 4th DCA 1998) (citation omitted)).

Mr. Neely was a business invitee when he entered Circle K to purchase items Circle K offered for sale. *See* Doc 1-2, p. 1 (Circle K's answer admitting Mr. Neely's status as a business invitee); *see also Graham v. Langley*, 683 So. 2d 1147 (Fla. 5th DCA 1996) (holding that a customer is a business invitee).

A business owner owes two separate and distinct duties to business invitees: First, it must "use ordinary care to maintain its premises in a reasonably safe condition," and, second, it must "warn of concealed dangers which are or should be known to the owner and which are unknown to the

10

invitee and cannot be discovered through the exercise of due care." *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1131 (Fla. 1st DCA 2017) (quoting *Rocamonde v. Marshalls of Ma, Inc.*, 56 So. 3d 863, 865 (Fla. 3d DCA 2011)).

"[W]hile many decisions speak of the duty to warn and the duty to maintain premises in a reasonably safe condition as separate and distinct duties, for analytical purposes the duties are not mutually exclusive, as the open and obvious nature of a condition may preclude a finding of a breach of either duty, as a matter of law." *Brookie*, 213 So. 3d at 1133.

"[T]here are two types of obvious conditions that will not constitute a breach of a duty to maintain premises in a reasonably safe condition, to wit: 1) where the condition is . . . 'open and obvious and not inherently dangerous'; **or** 2) where the condition may be dangerous, but is 'so open and obvious that an invitee may be reasonably expected to discover them to protect himself.'" *Id.* (emphasis in original); s*ee also Earley v. Morrison Cafeteria Co. of Orlando,* 61 So.2d 477, 478 (Fla. 1952) (noting a store proprietor "has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses") (citation omitted).

But, "where the danger is of such a nature that the owner should reasonably anticipate that it creates an unreasonable risk of harm to an invitee notwithstanding a warning or the invitee's knowledge of the danger, then reasonable care may require that additional precautions be taken for the safety

of the invitee." *Stewart v. Boho, Inc.*, 493 So. 2d 95, 96 (Fla. 4th DCA 1986) (citing *Pittman v. Volusia County,* 380 So.2d 1192, 1194 (Fla. 5th DCA 1980)).

Also, "[i]n cases where it can reasonably be expected that a person's attention may be distracted, prior knowledge of the defect by a plaintiff will not preclude recovery." *Regency Lake Apartments Assocs., Ltd. v. French*, 590 So. 2d 970, 973 (Fla. 1st DCA 1991) (citing *Stewart*, 493 So. 2d at 97). For example, in *Regency Lake Apartments Assocs., Ltd.,* plaintiff was walking her dog when she tripped over exposed tree roots. *Id.* at 972. Plaintiff was previously aware of the tree roots and walked by them on previous occasions. *Id.* However, on the day of her fall, plaintiff was distracted and tripped over the roots, because she was "trying to avoid a large dog running toward her in the path." *Id.* The court held that the defendant had a duty to maintain or correct the premises, because, despite plaintiff's knowledge of the defect, the event was foreseeable. *Id.* at 973. The court explained that "[t]he question of foreseeability of the distraction is generally a question of fact which should not be taken from the jury." *Id.*; *see also Taylor v. Tolbert Enterprises, Inc.*, 439 So. 2d 991, 992 (Fla. 1st DCA 1983) (holding that the defendant's liability regarding its duty to maintain the premises is not discharged where plaintiff observed the condition before falling).

Additionally, when a condition is concealed (that is, not reasonably discoverable by the invitee), and the landowner knows or should know about

it, the landowner has a duty to warn of the condition. *TruGreen LandCare, LLC v. LaCapra*, 254 So. 3d 628, 631 (Fla. 5th DCA 2018). That said, the existence of a condition that requires warning does not necessarily constitute a breach of the landowner's duty to maintain the premises, so long as he used the degree of care and prudence of an ordinarily prudent person in keeping the premises in a reasonably safe condition. *See, e.g., Fredrick v. Dolgencorp, LLC*, 304 So. 3d 36, 38 (Fla. 2d DCA 2020). For example, in *Frederick*, the plaintiff slipped in a puddle of spilled laundry detergent. *Id.* A manager had gone to get cleaning supplies but failed to alert anyone, including a worker checking out customers nearby, of the spill. *Id.* at 37. Less than a minute later, the plaintiff walked in and slipped on the laundry detergent. *Id.* The Second District Court of Appeal affirmed-in-part the trial court's order granting summary judgment for the store. *Id.* at 37. The Appeals Court agreed that no reasonable juror could have found that the defendant property owner had breached its duty to maintain the premises, because it did not have time to clear the spill. *Id.* at 38. However, citing testimony that the "store manager testified that he should have told the other employee about the spill, [so] that she could have warned [the plaintiff] as he walked in the store, [and] that he could have quickly blocked off the spill," the Appeals Court found that a reasonable juror could have found that the defendant property owner had breached its duty to warn. *Id.*

"The existence of a foreign substance on the floor of a business premises that causes a customer to fall and be injured is not a safe condition." *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 331 (Fla. 2001). Whether such a condition is so openly and obviously dangerous such that a customer can be expected to avoid it (i.e. that the condition does not inherently constitute a breach of duty) depends on the circumstances. *Greene v. Twistee Treat USA, LLC*, 302 So. 3d 481, 483-84 (Fla. 2d DCA 2020) (holding that "the open-and-obvious-condition principle is certainly not a fixed rule, and all of the circumstances must be taken into account") (internal quotation and citation omitted). Likewise context dependent is whether the landowner "reasonably should anticipate that the condition poses an unreasonable risk of harm to the invitee notwithstanding the obvious nature of the condition," such that he still retains "duties to protect or warn invitees." *Id*. at 483-84.

### i.  *Circle K's Maintenance of the Premises*

The parties agree that Mr. Neely slipped in a puddle caused by Circle K's leaking cooler.

Circle K argues that the puddle from the leak did not violate its duty to maintain the premises, because the hazard was "so open and obvious that [Plaintiff was] reasonably expected to discover them to protect himself." *Brookie*, 213 So. 3d at 1133; Doc. 24, p. 14; *see Earley*, 61 So. 2d at 478 ("the proprietor has a right to assume that the invitee will perceive that which would

be obvious to him upon the ordinary use of his own senses."); *Brookie*, 213 So. 3d at 1136 ("If the obviousness of the condition would lead a reasonable person to believe that the danger will be avoided, the condition is not unreasonably dangerous, and the landowner is not liable....").

In support of its argument, Circle K cites *Brookie, Inc.*, 213 So. 3d 1129. In *Brookie*, Florida's First District Court of Appeal granted summary judgment for a defendant against a plaintiff who injured himself tripping over a wood pallet that the plaintiff had seen both before and at the time of his fall. *Id*. at 1132. The court held that because the plaintiff was indisputably aware of the condition, the pallet was not a foreign substance, and the pallet was not inherently dangerous, the defendant breached no duty to the plaintiff. *Id*. at 1137.

Here, in contrast to *Brookie,* Circle K acknowledges that the leaked fluid was both foreign and dangerous. And here, the parties dispute whether Plaintiff was contemporaneously aware of the condition immediately before tripping over it. These are crucial distinctions.

Circle K next likens its case to *Earley*, where the plaintiff was injured when she tripped on a defective floor mat in a cafeteria. *Earley*, 61 So. 2d at 477. There, the trial court held that the defendants were entitled to summary judgment because the plaintiff indisputably had observed the defect in the floor mat moments before tripping over it. *Id*. at 478. The Florida Supreme Court

affirmed, holding "the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." *Id.* (citing *Miller v. Shull*, 48 So. 2d 521 (Fla. 1950)).

Here, in contrast to *Earley*, the parties offer opposing evidence as to whether Mr. Neely perceived the leak before his injury. *Compare* Neely Depo. Doc. 24-1, p. 19: 3-9 (Mr. Neely testifying that after he entered the store, he immediately went down the aisle to the right where he slipped and fell), *with* Radeboldt Depo. Doc. 24-2, p. 15: 12-25 (the former store manager testifying that Mr. Neely, after having entered the store, walked into multiple aisles, touched the warning cones multiple times, then slipped and fell), *and* Smith Depo. Doc. 24-4, p. 9: 9-19 (the former assistant manager acknowledging Mr. Neely walked by the wet spot several times before falling).

Circle K also relies on *McAllister v. Robbins*, 542 So. 2d 470 (Fla. 1st DCA 1989). There, the plaintiff was injured when he tripped on a concrete block along the defendant's property line. *Id.* at 470. The plaintiff acknowledged that "he knew the line of blocks existed before the accident," and, on the night of the accident, "he saw the blocks and 'was trying to step over the blocks' when his heel caught." *Id.* The appellate court affirmed summary judgment in the defendant's favor, noting that the plaintiff "saw and knew about the blocks at the time of the accident, and there was no question

of duty to warn, since plaintiff's knowledge was equal with that of the defendants." *Id*. at 471.

Here, in contrast to *McAllister*, the condition at issue (the cooler leak) was not a stagnant one, but one that was there sometimes, absent at others. The parties agree that both Mr. Neely and Circle K were aware that the cooler had leaked on prior occasions. *See* Neely Depo. Doc. 24-1, p. 30: 6-18; Radeboldt Depo. Doc. 24-2, pp. 40: 24-25; 41: 1-2.  But the parties dispute whether Mr. Neely was aware of the hazard before his fall. Ms. Smith testified that video evidence shows "[Mr. Neely] walked by the wet spot like several times like three or four times. I saw him go by, you know, like three or four times by the front door where [the water] was." Smith Depo. Doc. 24-4, p. 9: 9-19. The video of the incident, however, was not submitted to the Court as an exhibit to Circle K's motion.

In contrast to Ms. Smith's testimony, Mr. Neely testified that he "walked in. My stepdaughter went to the left. And the manager walked up beside me. I said hi to her and something else, and that's when I slipped and fell. 'Cause I was looking at her and not at the floor." Neely Depo. Doc. 24-1, p. 19: 6-9. Mr. Neely continued by stating that it was "three or four seconds" between when he entered the store and when he walked down the first aisle where he fell. *Id*. at 20: 18-22. In other words, he testified that he did was not aware of the hazard, either because it was not obvious or because he was distracted.

17

"When an injured party alleges that the owner or possessor breached the duty to keep the premises in a reasonably safe condition, an issue of fact is generally raised as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition would cause injury despite the fact it was open and obvious." *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 578 (Fla. 5th DCA 2005).  In analyzing whether a danger is open and obvious, the finder of fact is "required to consider all of the facts and circumstances surrounding the accident and the alleged dangerous condition." *TruGreen,* 254 So. 3d at 628 (citation omitted). Whether a landowner's duty to maintain the premises has "been breached is ordinarily a question for the jury to decide." *Hancock v. Dep't of Corr.,* 585 So.2d 1068, 1071 (Fla. 1st DCA 1991) (citation omitted).

The parties' conflicting testimony creates a genuine issue of fact as to whether the leak constituted an open and obvious danger, whether Mr. Neely was aware of the danger, and whether any distraction that may have prevented Mr. Neely's perception of the danger was a reasonably foreseeable one. Thus, the issue of whether Circle K breached its duty to maintain its premises is a question that must be resolved by a jury.

### ii. Circle K's Duty to Warn

Circle K next argues that, even if the leak were not an open and obvious danger, Circle K discharged its duty to Mr. Neely by warning him of the

hazard. Multiple Circle K employees testified that Circle K had placed cones around the leak and specifically warned Mr. Neely to avoid traveling down the aisle where the malfunctioning cooler was leaking water. Ms. Radeboldt testified that "[w]e had two cones when you first walk in" as well as two other cones on both sides of the cooler. Radeboldt Depo. Doc. 24-2, p. 15: 12-18. Ms. Radeboldt further testified that Mr. Neely "touche[d] the top of the cones" multiple times before falling. *Id.* at 15: 12-24.

Ms. Screen testified that she had been yelling out "Hey, don't go that way" to customers, and, when she told Mr. Neely, he ignored her. Screen Depo. Doc 24-3, p. 9: 1-16. Ms. Screen further stated that video evidence shows "you can see clearly where the cones was right at the door[,] to the left of the door is where I put the cones were the front of the aisle." Screen Depo. Doc. 24-3, p. 17: 12-24.

In contrast, Mr. Neely testified that employees did not warn him to avoid the aisle and that no cones were placed to warn him of the standing water. Neely Depo. Doc. 24-1, p. 28: 15-21.

"[C]onflicting testimony creates a question of fact and liability which cannot be determined at summary judgment." *F.D.I.C. v. Martin*, 801 F. Supp. 617, 621 (M.D. Fla. 1992); *see also Sears v. Roberts*, 922 F.3d 1199, 1209-10 (11th Cir. 2019) (where conflicts in the record exist at summary judgment, the Court must resolve the conflict of evidence in favor of the non-movant). Thus,

the question of whether Circle K discharged any duty it might have to warn Mr. Neely of the leak is one for the jury.

      B.   <u>Mr. Neely's Negligence</u>

While Mr. Neely claims that Circle K is solely liable for his injuries, Circle K asserts that Mr. Neely himself was to blame. Generally, a court should not grant summary judgment on the issue of the parties' relative negligence unless the Court finds that no reasonable jury could find the moving party to be at fault. *See Scott v. Harris*, 550 U.S. 372, 467 (2007) (holding that, when deciding on summary judgment, a court should not rule in favor of a party if no reasonable jury could return a verdict in favor for such party); *see also Garcy*, 731 F. Supp. at 1583-84 ("On a motion for summary judgment in a comparative negligence case, the court may render final judgment only where no genuine issue of material fact exists as to either parties' negligence in the accident.").

Here, because the parties have submitted opposing evidence as to whether Circle K exercised due care in maintaining its premises and warning of the leak, and as to whether Mr. Neely's choice to walk into standing water was careless, the parties' relative culpability is a triable issue of fact.

## IV. CONCLUSION

Here, each party has submitted evidence sufficient to allow a reasonable jury to decide in its favor as to: (1) whether the leak was a danger so open and

obvious that Mr. Neely should have perceived it and taken care to avoid it; (2) whether Circle K was required to warn Mr. Neely of the leak, (3) whether Circle K did warn Mr. Neely of the leak; and (4) whether Mr. Neely took proper care in navigating the leak.

Upon consideration and for the reasons described above, it is **ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 24), is **DENIED**.

**ORDERED** on April 11, 2024.

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE